[Crim. No. 483.    Third Appellate District.—January 19, 1920.]

THE PEOPLE, Respondent, v. D. O. MILLER, Appellant.

[1] CRIMINAL LAW—LARCENY OF AUTOMOBILE—UNEXPLAINED POSSES-SION BY DEFENDANT—INFERENCE OF GUILT.—In this prosecution for the theft of an automobile, the evidence showing the possession of the car by the defendant shortly after the commission of the crime and his failure to offer any explanation when arrested, coupled with other circumstantial evidence, was sufficient to justify the inference that the defendant was the perpetrator of the crime.

[2] ID.—FAILURE TO DEMAND CAR—COMMENT BY DISTRICT ATTORNEY—LEGITIMATE ARGUMENT.—In a prosecution for the theft of an auto-mobile, a statement by the district attorney, in his argument to the jury, that there is no evidence that the person to whom the defendant sold the car and from whom the owner recovered the possession thereof "has ever sought to recover this car; he never made a demand for the car," is within the scope of legitimate argument, that fact being a circumstance tending to shake the credit to be given to his testimony that he purchased the car from the defendant on a particular date, which date was more than two weeks before the theft, and to show his knowledge or belief that the car had been stolen.

[3] ID.—DEFENDANT'S UNEXPLAINED POSSESSION OF CAR—PROPER COM-MENT BY DISTRICT ATTORNEY.—In a prosecution for the theft of an automobile, it is not error for the district attorney, in his argu-ment to the jury, to call their attention to the failure of the de-fendant to produce any witness to account for his possession of the property.

APPEAL from a judgment of the Superior Court of Stanislaus County.   L. W. Fulkerth, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Ben F. Woolner and W. C. Le Hane for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was charged, in an informa-tion in the superior court of Stanislaus County, with the

---

1.   Possession of recently stolen property as evidence of larceny, note, 12 L. R. A. (N. S.) 199.

theft of a light Buick automobile, the property of one
J. W. Ross. He was convicted by a jury, and from the
judgment sentencing him to the penitentiary and from an
order denying his motion for a new trial, an appeal has
been taken. Some of the facts, upon which respondent
relies for a justification of the verdict, are undisputed and
others follow as a fair inference from certain evidence appearing in the record. We are warranted by this record
in stating the case as follows: On November 16, 1917,
Ross had the car standing on the street near his office in
the city of Modesto, in said county of Stanislaus. When
he went to get the machine, about 6 o'clock in the evening,
he found it had been taken away. On January 27, 1918,
the car was recovered from the possession of a man named
Christiansen at Fresno. It had been delivered to said Christiansen by the defendant herein on or about the twenty-fourth day of November, 1917. After Ross learned of the
finding of his car, he went to a garage, used and operated
by the defendant at Oakland, and there found and identified
certain parts of the equipment which had been on his car
when taken away and which had been removed therefrom.
When the machine was recovered, the engine number had
been changed. Certain parts of the equipment had been
removed and replaced by different equipment of similar
mechanical character. About the time that the car was
stolen, defendant had been seen to drive into a garage
at Riverbank, a town situated between Modesto and Oakland and about ten miles from Modesto, with a Buick automobile in his possession, which answered the description
of the machine taken, belonging to Ross. When defendant
was arrested for the theft, he made no explanation of how
he came into possession of said machine; he did not claim
that he had purchased it, nor did he state how long he had
been in possession of it. In fact, the officer who arrested
him testified that he made no statement concerning it whatever. Defendant was not called as a witness, and the
only thing in the record tending in the slightest to rebut
the inference of guilty possession was the statement of two
witnesses that defendant said he had purchased the machine from a woman at Redding.

It is the claim of appellant that the evidence is insufficient
to justify the conviction. The claim is based upon the contention, first, that there was no sufficient identification of

the machine as the property of Ross which was stolen; and, second, that, if so, there was not sufficient evidence to justify the inference that defendant was the perpetrator of the crime.

There is no merit whatever in the first of these contentions. J. W. Ross told an apparently straightforward story and pointed out the marks of identification by which he reached the conclusion that the machine was his property, and he declared, "and with all these identification marks I knew positively and absolutely that that was my car," and, furthermore, in reply to the question, "You have no doubt of it?" he answered, "No question of doubt whatever." [1] Something may be said in defense of the other claim, but a·reading of the record convinces us that the verdict is sufficiently supported to withstand an attack on appeal. The possession of the property shortly after the commission of the crmie is, of course, an important circumstance. Appellant's failure to offer any explanation when arrested could scarcely be of less significance in the minds of the jury than a confession of guilt. The jurors would naturally and reasonably conclude that if he had purchased the property or acquired possession of it honestly he would be swift to declare and explain the circumstances that vindicated his conduct. If he had purchased it from a woman in Redding or anyone else, is there anyone so unsophisticated as to believe that he would not have so declared and at least have made an effort to locate the vendor? His silence, when it would have been so easy for him to speak if innocent, is quite persuasive and convincing. Appellant claims that the incriminating force of this possession is materially weakened by the circumstance that it was not a "recent possession," since he was not arrested until more than two months after the theft. But this view ignores the fact that Christiansen himself testified that he purchased the machine from the defendant on November 24, 1917; and from the testimony of one Tony Lewis, who was working for defendant, it is a fair inference that appellant had the machine in his possession for at least a week before that. This would certainly bring it very close to the date of the theft. The jury had the right to conclude, also, that defendant had changed the number on the motor and had removed certain portions of the equipment and replaced them with others, for the purpose of concealing the identity

of the car, and that he was seen with the car, near the time of the larceny, about ten miles from Modesto. Of course, the evidence is circumstantial and not as conclusive as in many cases, but we think it cannot be said that the verdict is legally unsupported.

The case of *People* v. *Luchetti*, 119 Cal. 501, [51 Pac. 707], seems to have been no stronger for the prosecution than this, and yet, the supreme court upheld the conviction. We may compare the facts of the two cases to show their similarity. Therein, the cow (the property alleged to have been stolen) was missing one evening, and the next morning she was sold by the defendant to a butcher. The recent possession of the stolen property was the principal evidence against the defendant, as in the case at bar. In that case the defendant, however, took the stand and testified that he obtained the cow from one Joe Riverio. He gave quite a plausible account of the asserted transaction. It was held, though, that the jury had a right to reject his story as a fabrication. The supreme court attached much importance to the fact that the defendant made no effort to secure the attendance at the trial of said Joe Riverio or to have him arrested. The case here is worse for the defendant, since he made no explanation or did not attempt, either when arrested or at the trial, to excuse or justify himself. If we may believe that he stated to two of the witnesses that he purchased the machine from a woman in Redding, then it is entirely fair to assume that it was false, since he made no effort to verify it. In the Luchetti case, the court quotes from the authorities as to the significance of the possession of the stolen property and says: "Appellant contends that having given a reasonable account of the circumstances attending his possession of the cow, that it removes the inference of guilt, and that, therefore, the verdict should have been in his favor. But whether the account he gave was either true or reasonable was for the jury to determine, and in such case we cannot disturb the verdict, unless we can say that his explanation of his possession was so clearly and evidently true that the opposite conclusion could only be reached by a jury under the influence of passion or prejudice. We think the jury rightly concluded that his story was fabricated, and, therefore, that he was guilty of the larceny." When we recall the

silence of the defendant herein and his failure to make any
effort to show the honesty of his connection with the affair,
we can readily understand the significance that the jury
must have attached—and justly so—to the circumstance
of his possession of the stolen property.

[2]   Complaint is made of the conduct of the district
attorney in his argument to the jury. One of the state-
ments assigned as error was: "Now, there is no evidence
here that Mr. Christiansen has ever sought to recover this
car; he never made a demand for the car." This was
within the scope of legitimate argument. The district at-
torney had the right to attack the veracity of said witness
Christiansen. It is not claimed that there was any evidence
that he had sought to recover the car or had made a de-
mand for it. This was a circumstance tending to show his
knowledge or belief that the car had been stolen from Ross.
Thus would be shaken the credit to be attached to his state-
ment that he purchased the car on November 3d—more
than two weeks before the theft. Indeed, one can hardly
read the testimony of Christiansen without reaching the
conclusion that he was more anxious to shield the defendant
than to tell the truth.

[3]   Another statement was: "And Mr. Miller has sat
there during all this trial writing down all the evidence
and telling his counsel what to do, and yet he did not pro-
duce one witness of any kind to tell you where that machine
came from." Thereupon counsel for appellant said: "We
make a formal objection to the statements of the assistant
district attorney to the effect that Mr. Miller has been sitting
here taking down all the evidence and instructing his coun-
sel, as prejudicial, and not before this court and nothing
in the evidence to that effect, and assign it as misconduct."
It is to be observed that appellant made only a *formal*
objection and he did not request the court to direct the
jury to disregard the statement. We would be justified,
therefore, in dismissing the assignment without comment,
but it is clear that the only part of the statement of any
importance relates to the failure of the defendant to pro-
duce any witness to account for the possession of the prop-
erty and this was not in violation of the rights of the de-
fendant. In *People* v. *Waugh,* 30 Cal. App. 402, [158
Pac. 336], the district attorney called attention to the fact

that defendant's possession of the stolen jewelry shortly after the robbery "was unexplained by any sworn testimony." This was held to be proper, the court stating that it "was not indicative of a purpose on the part of such official to use against defendant the fact that he did not take the stand in his own behalf. (*People* v. *Fitts,* 4 Cal. App. 432, [91 Pac. 536].)"

We may add, moreover, that the trial court did sustain appellant's objection, and in effect did direct the jury to disregard said statement. The only other similar criticism is based upon the condition of the record as follows: "Mr. Maddux thereupon proceeded with the closing argument on the part of the people: . . . Mr. Fowler: 'I object to the remarks of the district attorney which is an inference that the defendant had to take the stand and explain his part of the transaction, which is a violation of his constitutional rights; and I assign it as prejudicial misconduct and ask the court to instruct the jury to disregard the remarks of the district attorney.' Mr. Maddux: 'I have made no such inference.' The Court: 'I understand that he simply referred to the fact that he had not made that explanation.' Mr. Maddux: 'I made no such inference.' The Court: 'Read what Mr. Maddux said, Mr. Reporter.' Reporter: 'I was not taking his argument, Judge.' The Court: 'Well, take down the statement, Mr. Reporter.' Mr. Maddux: 'I did make the statement that it is incumbent upon him, when he was caught red-handed with this automobile in his possession, it was up to him to explain where he got that machine. That is what I said and that is what I say now, and you can take a thousand exceptions if you like.' " This was followed by a further discussion between counsel, Mr. Maddux insisting that he made no such statement as was imputed to him by counsel for appellant. The court finally said: "The courts have differed very much on this question —as to the question of what burden may be on the defendant when he is found in the possession of recently stolen property. There seems to be a good deal of doubt, and there is some doubt in my mind whether a person under those circumstances is called upon to make an explanation—in other words, there is a presumption of guilt if he does not make an explanation." After some further remarks by the court and counsel the court concluded as follows: "I am

somewhat in doubt as to what the real law is on that question in view of the various holdings, so I have taken the view of giving the benefit of the doubt to the defendant and to instruct the jury that it is a circumstance tending to establish guilt. It is a suspicious circumstance. Of course if he explained it that would ·be a benefit to him; if he did not explain it, then it is a matter for the jury to take into consideration, with other circumstances, which may or may not tend to establish guilt. I think I shall so instruct the jury, but with that explanation I think it is not necessary for me to say anything further. The district attorney as I understand it is simply giving his view of the law.'' The court subsequently instructed the jury as follows: "You are instructed that the evidence of the recently unexplained possession of stolen property standing alone · is not sufficient to justify a verdict of guilty, even in a case of larceny . . . In cases of larceny the mere unexplained possession of stolen property is not alone .sufficient to warrant a conviction, but it is a circumstance tending to show guilt that can be taken into consideration in determining the guilt of the accused person, and such unexplained possession and other evidence tending to show guilt justifies the jury in· arriving at a verdict of guilty, if the same, taken as a whole, satisfy the minds of the jury beyond a reasonable doubt and to a moral certainty that the person accused is guilty of the larceny.'' It may be stated that the jury was clearly instructed that the presumptions of law are in favor of the innocence of the defendant and that the burden of proof is upon the people to establish the guilt of the accused to a moral certainty and beyond a reasonable doubt, before the jury can be justified in finding a verdict of guilty. We think it clear that the said statement of the district attorney was not intended, and could not be so understood by the jury, as referring to the failure of the defendant to take the stand, but that it referred to his failure to make any explanation of his possession of the property prior to the trial of the case. The situation is similar to that presented in the case of *People* v. *Fitts* and *People* v. *Waugh, supra,* wherein the question is fully considered and discussed. While the district attorney had no right to *use* against the defendant to his prejudice the fact that he had not testified as a witness, it was

entirely legitimate to comment upon his failure to offer any explanation of his possession of the stolen property. The expression of the trial court: "In other words, there is a presumption of guilt if he does not make an explanation," might be deemed prejudicial if considered apart from the context. But when the whole sentence is read it is perfectly apparent that the court meant to express a doubt whether such presumption exists. But the expression of such doubt is rendered innocuous by the subsequent clear instruction of the court on the subject.

In conclusion, we may state that the trial court was extremely careful to protect and safeguard all the rights of the defendant; that no errors were committed in the rulings during the progress of the trial; that the jury was fully and clearly instructed upon every phase of the issue involved, and, after a consideration of the entire record, we cannot say that the verdict was unjust.

The judgment and order are, therefore, affirmed.

Ellison, P. J., *pro tem.*, and Hart, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 18, 1920.

All the Justices concurred.