[No. 14785.   Department Two.   July 26, 1918.]

THE STATE OF WASHINGTON, *Respondent*, v.
DR. J. B. RAUB, *Appellant.*[1]

INTOXICATING LIQUORS—OFFENSES—ILLEGAL PRESCRIPTIONS — GOOD FAITH—EVIDENCE OF OTHER CRIMES. In a prosecution for illegally prescribing whiskey to a patient, within such time as obviously called for more than was needed, the question of good faith being an issue under the statute, evidence of the issuance of fifty-six other prescriptions to other patients at or about the same time is admissible and is not objectionable as evidence of other crimes.

SAME — ILLEGAL PRESCRIPTIONS — EVIDENCE — SUFFICIENCY. In a prosecution for an illegal prescription of whiskey "without good reason to believe" that the patient was sick or required it, it is not necessary to prove the physical condition of the patient or that she did not in fact need the remedy, where it was shown that accused had theretofore prescribed whiskey for such patient in quantities which would have more than met the "directions" at the time in question.

CRIMINAL LAW—TRIAL—MISCONDUCT OF COUNSEL. A remark of the prosecuting attorney in argument that the accused "has not

[1]Reported in 173 Pac. 1094.

testified," does not warrant a reversal, where, upon objection, the court directed the jury to disregard it and instructed the jury that no inference of guilt should be drawn from accused's failure to testify.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered December 15, 1917, upon a trial and conviction of violating the prohibition law. Affirmed.

*John M. Gleeson* and *Crandell, Williams & Crandell,* for appellant.

*John B. White* and *Joseph B. Lindsley,* for respondent.

CHADWICK, J.—Information was filed under Rem. Code, § 6262-1 *et seq.* The trial judge permitted the introduction of testimony showing the giving of some fifty-six other prescriptions than those given to the party named in the information, and at about the same time. Appellant had issued to his patient five prescriptions between the 26th day of August, 1917, and September 11, 1917, each calling for one quart of whiskey. On each prescription, the patient is directed to take one ounce of the remedy in water three times a day. As these prescriptions obviously call for a greater quantity of liquor than was necessary to meet the needs of the patient if "taken as directed" the good faith of the physician, the issue in this class of cases, was clearly tendered by the state, and to further sustain the issue the other prescriptions were offered.

"The rule is that, in cases of this character, such evidence is competent. The real issue in such a case is whether the prescription was given in good faith, and as bearing upon this question, the number of prescriptions given by the accused, within a specified time, for intoxicating liquor, to various persons, as found on the file of the druggist, in whose store the appellant kept

his office, is competent." *Seattle v. Hewetson*, 95 Wash. 612, 164 Pac. 234.

See, also, *Everett v. Cowles*, 97 Wash. 396, 166 Pac. 786.

It is urged that this procedure is violative of the rule that proof of crimes independent and in no way related to the crime charged cannot be established to prove a specific offense. It would be so if the crime charged rested alone in the doing of the act charged. But the gravamen of the offense is not in the doing of the deed, but in the faith in which it was done. The rule seems to have grown out of the necessities of the statute, for the act itself is presumptively a lawful act sanctioned by statute. It is rendered unlawful when, and only when, the writer of the prescription abuses the confidence that is reposed in him and by the injection of the subtle quality of bad faith thwarts the police power of the state. From the nature of things, good or bad faith can only be proved by resort to circumstances and side lights. If it were otherwise —if the mere giving of a prescription or a number of prescriptions by a licensed physician would bar further inquiry—the law would be emasculated of its purpose. It is not going beyond the range of judicial vision to say that liquor has not always been regarded as a cure-all or touchstone of health, but that it has grown in popular favor as a remedy as the chance of procuring it has grown remote; and although a physician who prescribes it may be imposed upon at times, a general dispensation of the remedy at or about the time charged is sufficient to put him to the defense of his good intention before a jury of his countrymen.

It is complained that no testimony was offered to show the physical condition of the patient, or that she did not in fact need the remedy, the charge being

that appellant prescribed liquor "without good reason to believe that she was at the time actually sick or that said intoxicant was required for medicine." But we think the showing that appellant had theretofore prescribed four quarts of liquor which would have met the "directions" for a time far beyond the time when the prescription upon which the charge is made (September 11th) was written, was a sufficient circumstance to go to the jury, and being unmet in any way, is enough to sustain the verdict.

Finally, it is complained that a new trial should be granted on the ground of misconduct of counsel. In his argument to the jury, Mr. Lindsley said:

"I think you could keep pretty full, pretty much intoxicated on five quarts of whiskey in sixteen days. And *Dr. Raub knew she did not need it for medicine.* The record he makes himself here on these prescription blanks speaks for him. *He has not testified.*"

The italicized words are complained of as comment on the fact that appellant had not taken the stand as a witness in his own behalf. *State v. Smokalem,* 37 Wash. 91, 79 Pac. 603. When objection was made, counsel for defendant moved that the jury be discharged. Whereupon the following colloquy:

"The Court: Ladies and gentlemen of the jury— Mr. Lindsley: Just a moment, your honor, I have a right to say to this jury that he is not called upon to testify. The Court: Wait a minute. Ladies and gentlemen of the jury, Mr. Lindsley had no right to comment upon the failure of Dr. Raub to take the stand and testify. Mr. Lindsley: I do not intend to. The Court: And you will disregard the remark completely. I will deny the motion at this time."

In addition to the specific direction to disregard the objectionable language, the court gave the usual instruction that no inference of guilt should be drawn

from the fact that appellant had failed to take the stand as a witness in his own behalf.

The conduct of counsel is not to be commended, but we think the fault was covered and the error, if any, was cured within the rule of our later decisions. *State v. Johnson, ante* p. 59, 173 Pac. 723.

Affirmed.

MAIN, C. J., HOLCOMB, MOUNT, and MACKINTOSH, JJ., concur.